BROWN v. DAVIS et al.

(Circuit Court of Appeals. Fifth Circuit. June 5, 1894.)

No. 235.

EQUITY—GOOD FAITH OF COMPLAINANT—ESTOPPEL BY SILENCE.

D., owning land on which M. held a vendor's lien and also a duly-recorded deed of trust, applied to B. for a loan on a deed of trust of the land, representing that there was no lien thereon except the vendor's lien; and B. consented to make the loan, without obtaining the usual abstract of title, relying on a partial abstract previously received in relation to a loan to another. M., being informed by both parties of an intent to pay off the vendor's lien, claimed payment also of an unsecured debt, and obtained from D. an order on B. for the amount of both, which B. paid; and thereupon M. executed to D. a release of his vendor's lien, but made no mention to B. of the deed of trust in his favor. *Held,* that a bill filed by B. for relief against M.'s deed of trust, making reckless charges of fraud and conspiracy against M. and others against whom he had no equity, impugning their personal and professional integrity, followed by reckless evidence in support thereof, which the slightest investigation would have shown him to be wholly unfounded, was properly dismissed, without regard even to the question whether M. was estopped by his silence, as B., making such a presentation of the facts, was not entitled to a favorable consideration of such partial equity, even if it were otherwise well founded.

Appeal from the Circuit Court of the United States for the Eastern
District of Texas.

This was a suit by J. Gordon Brown against Cornelius Davis and
others to restrain enforcement of a deed of trust and for cancellation
thereof. The circuit court dismissed the bill. Complainant ap-
pealed.

This suit was commenced in the circuit court of the United States in and
for the eastern district of Texas, April 6, 1891, by the filing of a bill by the
appellant, J. Gordon Brown, which bill alleged that J. Gordon Brown is a citi-
zen of the kingdom of Great Britain, and that Cornelius Davis, Adelaide Davis,
Harris Masterson, and Archie R. Masterson, are citizens of the county of
Brazoria, in the state of Texas. That Cornelius Davis applied to J. Gordon
Brown, in 1890, for a loan of money, offering to secure the payment thereof
by a deed of trust upon a parcel of land in Brazoria county, Tex., particularly
described by metes and bounds, and representing to the complainant, under
oath, in writing, that said land was clear of all incumbrances except a ven-
dor's lien in favor of Harris Masterson for $700. That in making said appli-
cation for said loan, Harris Masterson aided and assisted the said Cornelius
Davis, and negotiated with the complainant therefor; he, as well as the said
Cornelius Davis, representing to the complainant that the said land was clear
of incumbrances except the said sum of $700, due him as aforesaid; he and
the said Cornelius Davis agreeing with the complainant that, should such loan
be granted, he, the said Harris Masterson, should be paid the said sum of $700
as a cancellation of the said lien, and that thereupon the said Harris Master-
son would release and relinquish the said lien which he and the said Cornelius
Davis represented and led the complainant to believe was the only incum-
brance upon the said property. That the defendant Archie R. Masterson, an
attorney at law, at the instance of said Cornelius Davis and Harris Masterson,
was employed by the complainant to prepare for him a full and complete ab-
stract of all transfers in said Brazoria county appertaining to said land, and
in compliance with said employment the said Archie R. Masterson, on the
27th day of January, 1890, did prepare and deliver to the complainant what
he represented as being a full and complete abstract of said property, showing,
on the 27th day of January, 1890, by his certificate, that there were no liens
affecting the said lands, except the one stated in said abstract. That the de-
fendant well knew that the complainant relied upon the aforesaid representa-
tions of Cornelius Davis, Harris Masterson, and Archie R. Masterson with
reference to the liens upon the said property, and that, relying thereon, the
complainant made said loan to said Cornelius Davis, and paid the said sum of
money, on or about April 7, 1890, whereupon the said Cornelius Davis and his
wife, Adelaide Davis, made and executed their certain promissory notes for
said sum of money due, with 10 per cent. attorney's fees, aggregating the sum
of $2,200, and bearing interest at the rate of —— per centum per annum
from date, which deed of trust was filed for record on the 19th day of April,
1890, and duly recorded in Book 3, pages 29, 30, 31, and 32 of the Mortgage
Records of Brazoria County, Tex.; and that the complainant is still the
owner and holder of said notes. That all of the aforesaid representations of
defendants were faithfully and implicitly relied upon by the complainant
as being true, and, believing this, he loaned said sum of money as aforesaid;
otherwise he would not have done so, and this defendants knew. That all of
said representations made by the defendants were wholly false and untrue,
and that at the time of making said representations defendants knew that
they were false; but, nevertheless, knowing that complainant relied upon them
as true, said defendants made said false representations with the deliberate
intention of cheating, swindling, and defrauding the complainant. That the
complainant now finds that at the time said application for the loan of money
by said Cornelius Davis and wife the said Harris Masterson had in his pos-
session, duly signed, executed, and delivered, a deed of trust by and from the
said Cornelius Davis upon the identical land which was offered to and ac-
cepted by the complainant as his security for the said loan of money by the
said Cornelius Davis and wife, which deed of trust was made, executed, and
delivered on the 10th day of September, 1889, to secure the sum of $3,321.75,

with 12 per cent. interest. That, so conspiring and combining with the other defendants to cheat, swindle, and defraud the complainant, the said Harris Masterson retained said instrument in his possession in total ignorance of complainant, failing to file the same for record until the 21st day of January, 1891, a period of six days before the said Archie R. Masterson certified that there were no liens upon said property, except as hereinbefore stated. That at the time of soliciting and negotiating for said sum of money from the complainant the defendants well knew that the said deed of trust for $3,321.75 in the possession of said Harris Masterson was an incumbrance upon said property, besides the lien of $700 before stated, but nevertheless concealed such fact from the complainant, and designedly failed to place said lien on record until just in time to acquire precedence over the lien of complainant. That said Harris Masterson was and is the beneficiary in said deed of trust of $3,321.75, and the said Archie R. Masterson, who prepared and delivered to the complainant the aforesaid false and fraudulent certificate, is a brother of said Harris Masterson, and is the trustee in said deed of trust securing said sum of $3,321.75. That while so employed by complainant as his attorney, and at the time he made said false and fraudulent abstract and certificate, the said Archie R. Masterson well knew that said deed of trust in which he was trustee, securing his brother in the sum of $3,321.75, was in the possession of Harris Masterson, and knew that the same was to be and was placed upon the record anterior to the complainant's deed of trust, and was so of record, and constituted a lien upon the said property, at the time he made said false and fraudulent abstract and certificate; and that in making the same he colluded, conspired, and combined with the other defendants herein for the purpose of aiding them in their schemes to cheat, swindle, and defraud the complainant. That said deed of trust of Cornelius Davis to Harris Masterson, given to secure the sum of $3,321.75 aforesaid, as a matter of fact is a pretext and pretense on the part of the defendants to affix and establish a prior lien upon said property, and to have said property sold thereunder, and thereby to cheat and defraud the complainant out of his said sum of money loaned to said Cornelius Davis and wife, and intending to force the sale of said land under the said deed of trust, and buy the same in themselves, and thereby deprive the complainant of his money loaned upon said land, or force the complainant to buy the same at an exorbitant sum, sufficient to cover both debts, while the fact is that said Cornelius Davis, at the time of executing the said deed of trust, was not indebted to said Harris Masterson, except in the sum of $700, which was to be paid by the complainant, and for which said Harris Masterson executed a release. And that the said Archie R. Masterson, defendant, as trustee in the said deed of trust securing the sum of $3,321.75, due on the 13th of March, 1891, posted his certain notices upon the courthouse door of Brazoria county, and on other places in the county, as provided by law, whereby he announces and gives notice that he will proceed to sell said property under said deed of trust on the first Tuesday in April, 1891, at the courthouse door of Brazoria county, and that, unless restrained by the court, he will so proceed to sell said property. The bill prayed for an injunction; that the defendants should answer; and that the complainant, on hearing, should have judgment perpetuating the injunction and canceling the deed of trust executed by Cornelius Davis to Archie R. Masterson, as trustee, to secure the said Harris Masterson the sum of $3,321.75; and for general and special relief. This bill was unqualifiedly sworn to by the complainant, J. Gordon Brown, as being true. Upon the presentation of the bill in chambers, the district judge granted an injunction restraining Archie R. Masterson, trustee, from making the sale of the property.

Archie R. Masterson filed a sworn answer to the bill, wherein he generally and categorically denied all the allegations charging his connection with the transactions as set forth in the bill. Harris Masterson filed a sworn answer, admitting his relationship with Archie R. Masterson; the existence of the deed of trust in his favor as charged by the complainant; that the complainant made the loan of $2,000 to Cornelius Davis, and that he received $1,285 of the money borrowed from complainant in satisfaction of a vendor's lien, which was released by him; but he generally and specially denied all the alle-

gations in the bill charging him or his brother with fraudulent doings. Thereafter, on May 7th, the complainant, J. Gordon Brown, by leave of the court, filed an amendment to his bill of complaint, and therein, in addition to the allegations in his original bill, he further alleged that, besides the representations made by Cornelius Davis in his application for a loan, he made to one E. L. Dennis, the agent of the complainant, the same representations, upon which representations complainant also relied; and that for several months prior to the application of Cornelius Davis for said loan of money the defendant Harris Masterson had been acting as correspondent of the complainant and of his firm of Brown Bros. in carrying through for his clients loans secured by real estate in Brazoria and adjoining counties; and complainant relied upon said Harris Masterson's good faith, and frequently consulted and advised with him upon said applications for loans. That the said Harris Masterson, in his correspondence, assured the complainant and his firm that they might rely upon his good faith. That the said defendant Harris Masterson, at and during the time he was so acting, well knew, and was so informed, that the complainant would not loan money on prior incumbered property, but in all cases he required a first mortgage lien or deed of trust to secure him in the loan of money; and that, in case the application was made for a loan of money on incumbered property, complainant required that said incumbrance be paid off, liquidated, and discharged, otherwise he would not make the loan thereon, it being the established rule of the complainant and his said firm, and which the said Harris Masterson well knew, that he must have in every case a prior lien upon property accepted as security, and that the complainant would not loan money secured by property upon which there existed any prior lien or preferred lien. That the said Harris Masterson knew the value of the property offered and given by Cornelius Davis to complainant, and well knew that the complainant would not loan exceeding 40 per cent. of the value of property received as security, and that in the estimated value of the property as security it must in all cases be clear of prior mortgages. That during the pendency of the said application of Cornelius Davis to the complainant for a loan of $2,000, E. L. Dennis, of Houston, Tex., was appointed representative of complainant and his firm to negotiate loans for his clients in the country contiguous to the city of Houston, including Brazoria county. That during the pendency of said application for a loan by Cornelius Davis the said Harris Masterson received from the complainant a letter requesting him in future to send his applications for loans to said E. L. Dennis, and that negotiations and correspondence relating thereto should be made through the said E. L. Dennis, and that for a long period thereafter, including all the time in which the said Cornelius Davis' application for a loan was pending, the said Harris Masterson continued to assist the said E. L. Dennis in negotiating loans for the complainant, acting in conjunction with E. L. Dennis. That, pending the negotiation of the loan of $2,000 to Cornelius Davis, which was negotiated principally through E. L. Dennis, said Harris Masterson well knew the terms and conditions upon which said loan was being made, and well knew the value of the property offered for security, and well knew the amount of money that the said complainant was loaning to the said Cornelius Davis on said security. That in November, 1889, said Harris Masterson negotiated with and for the complainant a loan of $5,000 to said Cornelius Davis, secured by land in Matagorda county, the greater part or all of which money was received by said Masterson himself in consideration of a release of a lien which he held on said land. And otherwise repeating the charges made in the original bill with regard to the want of knowledge on the part of the complainant, the abundance of knowledge on the part of Harris Masterson, and further alleging that the said Harris Masterson stood idle by, and induced and permitted the complainant to expend and loan the sum of $2,000 to Cornelius Davis under false and fraudulent representations, and received and kept most of the proceeds of said loan, the complainant, J. Gordon Brown, again swore to the truth of the facts as set forth in the amended bill.

Harris Masterson answered this amended bill, and denied therein that he ever corresponded with or wrote to the complainant, J. Gordon Brown, upon any subject whatever, but admitted that he had written to Brown Bros., loan agents, relative to making loans for different parties; and he denied that there was ever

at any time confidential relations between himself and Brown Bros. further than that which existed generally between business men who are strangers to each other, writing to each other on business matters. He denied that he knew any rule of the complainant, in his individual business in loaning money, relative to taking property as security upon which existed a prior lien. He denied that he was aware, except by the allegations made by the complainant, when the negotiations between Cornelius Davis and J. Gordon Brown commenced; that he ever represented J. Gordon Brown personally in anything at any time, and ever represented Brown Bros. in anything at any time further than to make inquiries if they desired loans and to give names of parties wishing to borrow money; and he further denied that he had ever consulted with J. Gordon Brown or Brown Bros., or corresponded with them, relative to or concerning any applications made direct to Brown Bros. or through other parties than himself. He admitted that he knew the value of the property in question when the complainant made his loan upon it, but alleged that he was in absolute ignorance of any and all negotiations between the complainant and Cornelius Davis until the loan was closed. He again denied that the complainant, J. Gordon Brown, or the firm of Brown Bros., ever consulted or conferred with him about the $2,000 loaned to Cornelius Davis on the property in question, or its value, or the title of said property on which said loan was made, further than to ask a release of the vendor's lien of $700 and interest, which was given. He admitted that in the early part of 1890 he wrote to Brown Bros. relative to business matters, and was referred by them to E. L. Dennis as the sole agent for that part of the country; but he denied that he assisted E. L. Dennis in making any loan to any one, except that he had assisted one Terry in obtaining a loan from Brown Bros., which loan, he said, had no connection whatever with the Davis loan. He reiterated his previous denials with regard to knowledge of the terms and conditions upon which the Davis loan was being made, and with regard to the knowledge of the rules and intentions of the complainant in the matter of loaning money. He admitted that he made a loan for Cornelius Davis with Brown Bros., in 1889, for $5,000, on Matagorda county property, and that a part of the money was received by him in payment of a lien held by him on that property; but he said that he represented Davis in making the loan, and that in relation thereto, in his opinion, said Brown Bros. are entirely safe and secure. He denied that he executed any release of the 535 acres of land in question for any other purpose than that expressed in said release itself, or with any other view than that declared in said release, and he alleged that he made no representations whatever to E. L. Dennis, or any one else, that he would do more than release the vendor's lien on payment of $700 and interest. He denied that he ever had more than one interview with E. L. Dennis touching this matter, and said all that transpired then was that he presented to said Dennis the draft of Cornelius Davis on Brown Bros., and the release of the vendor's lien attached thereto, and that at said interview nothing was said by either party about the title of this land, its value, incumbrance thereon, or anything else concerning it further than aforesaid. He further alleged that he had nothing whatever to do with the loan of Davis, made suggestions or inquiries, deeming it none of his business. He denied that he ever made any loan in Davis name to raise money for himself and to secure it by the land of Davis, and alleged that all of the loans that he ever had any connection with for said Davis were made to procure money for Davis to pay his honest and just debts, to whomsoever he owed them. He denied that E. L. Dennis, as agent of Brown Bros., relied upon him in faith and confidence, or had any reason so to do, relative to the loan of Davis. He closes his answer with a reaffirmation that the deed of trust in favor of Archie R. Masterson from Cornelius Davis, Harris Masterson, cestui que trust, was given to secure an honest, just, and valid debt, made in good faith, long prior to any lien or claim of complainant, and the debt for which it was given is still due and unpaid.

This answer was filed on the 12th of May, 1891, and thereafter, on November 2, 1891, the defendant Harris Masterson filed a general and special demurrer to the complainant's original and amended bill of complaint. This demurrer, complainant moved to take from the files, as coming after answer filed, and too late. On December 7, 1891, the complainant moved

the court for leave to file a supplemental bill to set forth sundry facts that had happened since the institution of the suit; and afterwards, on the same day, moved the court to direct a repleader in the cause by all parties. This last motion was granted on the consent of counsel for certain of the parties. On December 15, 1891, the complainant filed an amended bill of complaint. This bill of complaint reiterated the matters set forth in the original and amended bill of complaint, but with more particularity. On the same day complainant filed a supplemental bill of complaint, alleging, in substance, that one T. L. Smith had filed a suit in the district court of Brazoria county, state of Texas, claiming to have purchased from Harris Masterson the claim against Davis secured by the deed of trust, and asking a decree for the foreclosure thereof; that the complainant had been made a party defendant to said suit; and that the prayer for relief was that the said deed of trust in favor of Masterson be decreed prior and superior in rank to the deed of trust made by Cornelius Davis to the complainant. The supplemental bill further alleged that the transfer from Harris Masterson to Smith was made pending the suit, and that Smith had actual notice; that Harris Masterson was the attorney for Smith; and that the proceedings in the district court of Brazoria county were for the purpose of directly evading the injunction issued in the cause. After other and formal allegations, the supplemental bill prayed for an injunction against the further prosecution of the suit in the district court of Brazoria county. On the same day, the court being in session, an order was entered granting the injunction, and citing Harris Masterson to show cause why he should not be held in contempt of court. On March 7, 1892, Harris Masterson and Archie R. Masterson filed their separate answers to the amended bill of complaint, alleging, in substance, the same facts as contained in their former answers, and again denying generally and specifically all allegations tending to charge them or either of them with fraudulent conduct. In August, 1893, the complainant filed an additional, supplemental bill of complaint, in substance, that during the pendency of the cause and the existence of the injunctions therein, the said T. L. Smith, acting by and through Harris Masterson, had procured a judgment in the district court of Brazoria county; that an order of sale had been issued under and by virtue of said judgment, and that the sheriff of Brazoria county was proceeding under said order of sale to sell said lands. The complainant prayed for an injunction against all parties, including the sheriff of Brazoria county and the clerk of said court, from proceeding to execute said judgment. On this supplemental bill an injunction was granted by the district judge in chambers, as prayed for. Exculpatory answers were filed by the defendants to the supplemental bills, and general and special replications were filed to all the several answers; but no decree pro confesso appears to have been taken against Cornelius Davis or Adelaide Davis. In this condition of the pleadings the cause was submitted on the 24th of October, 1893. Thereafter, on the 18th of November, 1893, the court filed its opinion, and on the same day entered a decree in favor of the defendants Harris Masterson, Archie R. Masterson, and T. L. Smith, dissolving and vacating all injunctions and restraining orders issued in the case, and dismissing the complainant's bill and amended bill with costs. From this decree complainant, J. Gordon Brown, prosecutes this appeal, assigning errors as follows: "(1) The court erred in rendering judgment for the respondents and in dissolving the injunctions previously granted in this cause, because the records of the case show conclusively that previous to the time of granting and paying the loan to Cornelius Davis by the complainant, Harris Masterson was occupying a fiduciary relation towards the complainant, and was occupying said relation at the time of granting and paying of said loan, and continued to occupy it for some time thereafter, and that, as such, it was his duty to impart to the complainant any and all facts within his knowledge concerning incumbrances upon said land offered for security; the testimony showing that in Davis' application for said loan he made an affidavit, and filed with complainant, stating that said land was unincumbered; the testimony also showing that Masterson knew that the complainant was loaning said money upon the belief that said land was unincumbered, and also

knowing that the complainant relied implicitly upon him, the said Masterson, to impart all such information as he had, which would be of interest to the complainant. That the said Harris Masterson was estopped to assert a lien in his own favor as against the complainant's lien, and the injunction against his enforcement of said lien should have been made perpetual. (2) The court erred in its conclusion that the respondent Harris Masterson was not estopped by reason of the fact that it was not shown that he was actually employed as attorney in this particular transaction, because, in the absence of employment, and in the absence even of a fiduciary relation towards the complainant under the facts of this case, he was in equity completely estopped from asserting his lien."

J. M. Coleman, for appellant.

B. T. Masterson and H. Masterson, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge (after stating the facts). The complainant's original bill, and the answer thereto of Harris Masterson, ought to have been referred to a master, to be purged of scandal and impertinence, at the cost of the respective parties. In the record we find no note of evidence by either party, but we do find, in no particular order, ex parte affidavits, documents, depositions, and evidence taken orally before the examiner; and we also find the following certificate:

"In the United States Circuit Court for the Eastern District of Texas, at Galveston, Texas.

"Ch. No. 242. J. Gordon Brown v. Cornelius Davis et al.

"This is to certify that, as trial judge sitting in the above numbered and styled cause at Galveston, Texas, in November, 1893, there was much oral testimony heard and considered by the court on the trial of said above numbered and styled cause that was not taken down by any one in writing, neither the attorneys for complainant nor respondents requesting that it be done; and that said oral evidence is not in the record of this cause, upon which, in part, the decision of the court was based.

"Aleck Boarman,
"Judge Sitting on the Trial of the Above Numbered and Styled Cause."

It was the duty of each party to prepare and file in the record a note of the evidence upon which he relied, and it was his further duty to see that that evidence was filed with the clerk in such shape that it could be embodied in the transcript of appeal. The evidence found in the record wholly fails to sustain the sweeping charges of conspiracy and fraud contained in the original and amended bills. As to Archie R. Masterson, it not only fails to establish the charges of conspiracy and fraud made against him, but it is so strong in his favor as to affirmatively relieve him of all suspicion of any conduct in any wise affecting his personal or professional integrity. There is not a particle of trustworthy evidence in the record showing or tending to show that Archie R. Masterson was employed by the complainant, J. Gordon Brown, at the instance of any person whatever, to prepare for him a full and complete abstract of all transfers in Brazoria county appertaining to the lands described in the bill, or that he was

employed by any person whatever to make any such abstract, or that, in compliance with such employment, or without such employment, he did prepare and deliver to complainant what he represented as being a full and complete abstract of said property, or ever prepared or delivered to the complainant any abstract whatever. Nor is there any evidence in the record showing or tending to show that Archie R. Masterson knew anything about, or had anything to do with, any loan that the complainant made to Cornelius Davis, prior to the making thereof. The evidence affirmatively shows that Archie R. Masterson was not called upon by complainant to make any abstract at all in relation to any lands; that he made no abstract of the Davis lands; that he knew nothing of the loan by the complainant to Cornelius Davis; and that he was not even aware, at the time said loan was made, that he himself was named as trustee in the trust deed given by Cornelius Davis in favor of Harris Masterson in September, 1889. The complainant's charges so recklessly made against Archie R. Masterson have for a foundation only the fact that, prior to Cornelius Davis' application for a loan, Archie R. Masterson made an abstract, at the request of one Faickney, of the title to other lands, and on an application of Faickney to another mortgage company for a loan. Upon this fact of an abstract made at the request of another company of the title of other lands for another borrower of money is built the whole case of the complainant against Archie R. Masterson, by which he seeks to throw the consequences of his own carelessness and inattention to business details upon an innocent party. As to Harris Masterson, the complainant's case is but little better founded. The evidence wholly fails to support the charges of fraud and conspiracy made against him. It is not true that Harris Masterson aided and assisted Cornelius Davis in his negotiations with the complainant, J. Gordon Brown, for the loan of money upon lands described in the bill, or that he represented to complainant that said land was clear of incumbrances except the sum of $700, or that he made any agreement with the complainant as to the payment of $700 in case said loan should be granted, or that he represented to and led the complainant to believe that the said $700 was the only incumbrance upon said property. It is not a fact that Harris Masterson induced the complainant to employ Archie R. Masterson for any purpose whatever. It is not a fact that the complainant relied upon any representations of Harris Masterson. Nor is it a fact, under the evidence in the case, that Harris Masterson knew anything about the application of Cornelius Davis for a loan, or had anything whatever to do with forwarding the same. The evidence does not show that Harris Masterson combined and conspired with any person whatever to cheat, swindle, or defraud complainant in relation to the Cornelius Davis loan, or any other loan; and the evidence sustains as genuine the deed of trust made and executed by Cornelius Davis to Archie R. Masterson, trustee, on the 10th day of September, 1889, to secure, in favor of Harris Masterson, the sum of $3,321.75, with 12 per cent. interest; and

it shows that said deed of trust was placed of record nearly one month prior to the application of Cornelius Davis to Brown Bros. for a loan upon the lands in question. The evidence in the case fails to show that, in regard to Brown Bros., or the complainant, the said Harris Masterson, at the time Cornelius Davis applied for a loan, occupied any relation of trust or confidence to the said Brown Bros. or to the complainant. We say "at the time Cornelius Davis applied for a loan," because that is sufficient for this case, as on that very day any confidential relations that may have previously existed in relation to loans from Brown Bros. applied for through Harris Masterson were severed. The impression, however, left on our minds by the evidence is that at no time did fiduciary relations exist between Brown Bros. and Harris Masterson, no matter how much confidence Brown Bros. or J. Gordon Brown may have had that Harris Masterson was a reliable man to deal with. The evidence rather tends to show that Brown Bros., in their transactions with Harris Masterson, treated and trusted him as the agent of the borrower, and not as their own, and in all respects dealt with him at arm's length. We have observed in other cases that this has been the practice with kindred concerns engaged in loaning money, where the rule invaria bly is to put all the expenses upon the borrower; and we find nothing in this record to show that Brown Bros., or the complainant, J. Gordon Brown, followed any other practice. Brown Bros., and their rules and dealings, necessarily come to the front in this case. It was with Brown Bros. that Harris Masterson had dealings from 1888 to 1890 on behalf of various borrowers whom he represented. It was to Brown Bros. that the letters of Harris Masterson, which appear in the record, were written. It was to Brown Bros. that Cornelius Davis made his application for a loan. It was Brown Bros. who made the loan to Cornelius Davis, and who paid off the vendor's lien which Harris Masterson held. And the evidence in this case leaves a very strong impression with us that Brown Bros. are the real complainants in this suit, and any other impression seems incompatible with the assumption that J. Gordon Brown and R. L. Brown testified fully and truly in giving evidence in the case.

These conclusions necessarily dispose of all the alleged equities asserted by the complainant, except such as may arise from the following facts, developed by the evidence: Cornelius Davis owned a tract of land in Brazoria county, on which Harris Masterson held a vendor's lien for the sum of $700, of several years' standing, and also a deed of trust to secure the payment of a debt amounting to $3,321.75, which deed of trust was duly recorded in the records of Brazoria county on the 21st of January, 1890. On the 19th day of February, 1890, Cornelius Davis made application to Brown Bros., money lenders, for a loan of $2,000, to be secured by deed of trust on said lands; and in such application represented that there was no lien upon the said land except the vendor's lien in favor of Harris Masterson for $700. Brown Bros. decided to make the loan requested by Cornelius Davis, but in so doing did not provide them-

selves with an abstract of the title of Cornelius Davis, as is usual in such cases, but relied upon a partial abstract received by them prior to the application of Cornelius Davis in relation to another loan to another party. Harris Masterson · was informed by the agent of Brown Bros. of an intent to pay off the vendor's lien of $700, and also received the same information from Cornelius Davis. Harris Masterson claimed from Davis the payment of an unsecured debt of $585 for amounts advanced for the payment of taxes, as well as the payment of his vendor's lien, and obtained from Cornelius Davis an order upon Brown Bros. for the sum of $1,285, the amount of the vendor's lien and the unsecured debt, which Brown Bros. paid; and thereupon Harris Masterson executed to Davis a release of his vendor's lien upon the land, but made no mention to Brown Bros., or to their agent, of the deed of trust in his favor on record in Brazoria county. The contention of the complainant is that when Harris Masterson, knowing the purpose of the complainant to secure a prior lien upon the property, received the amount of his vendor's lien, it was his duty to make known that he also held a trust deed of record bearing upon the said land which would be prior in rank to the complainant's mortgage; and that by his silence with regard to the existence of the trust deed under the circumstances mentioned he is estopped in equity from asserting that trust deed as against the trust deed in favor of the complainant. This view of the case is strongly supported by the authorities, although there are some qualifications. On the other hand, it is contended that Harris Masterson had good reason to believe that Brown Bros., who he supposed were making the loan, were fully advised of the existence of the trust deed, as shown by the records, because he had every reason to suppose that, as prudent business men, and according to the general practices of careful money lenders in dealing with land, they had provided themselves, in the matter of the loan to Davis, with the abstract and certificate usual in such cases, which abstract and certificate would have fully shown the true state of facts; and that Masterson, not being in any way connected with the loan, and only applied to with reference to the payment of his vendor's lien, was not called upon to furnish information which he had the right to suppose was already in their possession. There are some adjudged cases supporting this view of the case. As the whole case was presented in the court below, and even in this court, we do not feel called upon to enter into the merits of this contention. If this were a case in which the complainant had come into court with a fair presentation of the facts, evincing a disposition to assert his equities without injury to others, and had presented the matter of estoppel upon the real facts of the case as above stated, we are inclined to the opinion that he would not have been turned out of court without consideration of his right to assert the estoppel in question. Such a case, however, is not the one in hand, but rather a case where the complainant, by his reckless charges of fraud, and conspiracy to cheat, swindle, and defraud, against Harris Masterson and other parties against whom he had no equity whatever, impugning their

personal and professional integrity, and following the same up with reckless evidence in support thereof, which the slightest investigation would have shown him to be wholly unfounded, presents himself as one more inclined to ask equity than to do equity, and one not in court with such clean hands as entitle him to demand of the court to consider favorably to him the partial equity suggested, even if it were otherwise well founded. Certainly, as the case was there presented, the decree of the circuit court dismissing the complainant out of court was properly given; and, even as the case is presented here, we see no sufficient reason to disturb the same. Affirmed.