## MASTERSON v. BROWN.[1]

(Circuit Court of Appeals, Fifth Circuit. February 4, 1896.)

### No. 421.

LIMITATIONS—LIBEL—STATEMENTS IN JUDICIAL PROCEEDINGS.

A cause of action for libel, founded upon publications made in the course of judicial proceedings, does not accrue until the final determination, in favor of the party libeled, of the proceedings in which the publication is made, and the statute of limitations accordingly does not begin until then to run against such cause of action. Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Texas.

B. T. Masterson, S. R. Fisher, and J. C. Townes, for plaintiff in error.

W. L. Walton and T. W. Gregory, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

McCORMICK, Circuit Judge. On April 6, 1891, J. Gordon Brown, the defendant in error, brought a suit against Archie R. Masterson, the plaintiff in error, and other parties. That suit was tried and came to final decree in the circuit court in favor of the defendants on November 18, 1893. Brown appealed, and the decision of this court affirming the decree was rendered June 5, 1894, and is reported in 10 C. C. A. 532, 62 Fed. 519. On September 10, 1894, this action for malicious prosecution and for libel was brought. On July 12, 1895, the plaintiff below filed his amended original petition, which, under the practice in Texas, took the place of the original petition. To this pleading Brown opposed (1) a general demurrer, specifying several grounds; (2) a special demurrer in varying forms, setting up the statute of limitation. The circuit court overruled the first of these demurrers, and sustained the one setting up the limitation of one year.

It is suggested by counsel that the circuit court in ruling on the demurrers held that the plaintiff's pleading was not good as an action for malicious prosecution, but was good as an action for libel; that the publications complained of were not absolutely privileged, though made in the progress of judicial proceedings, but that the entire cause of action arose on April 6, 1891, and was barred by the statute of limitation before the institution of this suit. The plaintiff, not being able by amendment to avoid the demurrer as thus grounded, declined to amend, and judgment of dismissal and for costs was entered against him. The recorded judgment on the demurrers does not expressly show all that counsel suggests, but clearly implies it, for it is settled and conceded that a cause of action for malicious prosecution is not complete until the malicious prosecution is finally disposed of in favor of the defendant, which cannot be claimed to have occurred in this case before November 18, 1893, if before June 5, 1894. It is, we think, settled, though not conceded, that plaintiff's original

[1] Rehearing pending.

amended petition as to this suggestion of limitation took the place of the original petition, related back to the institution of the suit, and is no more subject to the defense of limitation than if it had been filed September 10, 1894. While this is not conceded in the argument of the defendant's counsel, it appears to be substantially admitted by this language of the demurrers: "Because it appears on the face of the petition that the alleged libelous matter charged therein against defendant happened, occurred, and took place more than one year before the institution of this suit on the 10th day of September, 1894." Nor is this substantial admission qualified by this language, used in another subdivision of the grounds of the demurrers: "Because the cause of action, if any, arising out of and from the matters and things stated in said repleader bill, appears on its face to be barred by the statute of limitation of one year at and before the institution of this suit." The whole of the demurrer, general and special, in all of its specifications, is necessarily interposed to the amended original petition. And, while the plaintiff in his assignment of errors has embraced six specifications to which he invites the careful consideration of the court, relying on and urging each as a ground for reversal, it is plain that the assignment resolves readily into this: that the circuit court erred in sustaining the defense of limitations to the plaintiff's action.

Originally, that is to say from a time whereof the memory of man runneth not to the contrary, it was the common law of England that the party aggrieved had an action on the case for malicious prosecution in a civil suit. And at a later period, in lieu of this remedy, or possibly in addition to it (it is not quite clear in the traditions), parties were in a measure protected against malicious prosecutions in civil suits by the requirement that all plaintiffs in civil actions should give pledges or sureties for the effective prosecution of their suit, on failure to establish which the plaintiff and his sureties became liable to be amerced by the judges in favor of the king for troubling his courts with a false claim. As yet no costs were taxed or adjudged in favor of a successful defendant, though an addition to his damages on account of his trouble and expense in having to go to law for his rights was always allowed by the jury, under the instruction of the judges, in favor of a prevailing plaintiff. The English common law had its origin and early growth in royal edicts and statutes, the text of which has perished, and the substance of which, so far as it was preserved at all, was for ages in most part transmitted by tradition through their application to cases as they arose in the king's courts. The practice of amercement proving to be clearly inadequate to protect parties from false or frivolous suits, statutes began to be proclaimed allowing successful defendants in certain kinds of actions to recover costs. One of the earliest of these is the statute of 52 Hen. III. c. 6 (A. D. 1267), often referred to in connection with the subject we are now discussing as the "Statute of Marlbridge." It was framed to meet a single case or cases of a single class. Other statutes followed after many years, but

no statute of general application allowing costs to be taxed or assessed in favor of all successful defendants was proclaimed until 23 Hen. VIII. c. 15,—300 years after the statute of Marlbridge. After this, statutes on this subject became more frequent, and their cumulative provisions more comprehensive, allowing costs to be taxed to some extent before a prothonotary or other officer of the courts, but also authorizing judges in the law courts, like the chancellor sitting in equity, to assess for and against the respective parties such costs as, in the discretion of the judge, the rights and conduct of each required. Thus a defendant who was sued out of malice, falsely and without probable cause, had his adequate remedy in that suit; and, while such was the law of costs, it began, certainly as early as the time of Elizabeth, to be held that, with exceptions in favor of cases showing special injury, a subsequent action for malicious prosecution in a civil suit would not be entertained. · By the more recent statutes in England the allowance of costs is under a general rule, but in a majority of cases is a complete satisfaction to a successful defendant. 3 Bl. Comm. 399; Co. Litt. (19th Lond. Ed.) note to 101a; Institute Bac. Abr. tit. "Costs." Our examination has not gone far enough to enable us to say that no similar or equivalent provisions for adjudging costs are of force in any of the different states. In some of the older states the law of costs seems, to a nonresident, to be so abstruse and complex as to require the training of a specialist to master it. No equivalent provisions are, or have ever been, in force in Texas. On the question whether an action for the malicious prosecution of a civil suit will be allowed no rule of decision has been adopted by the national courts, and on it there is no uniformity in the state decisions. The highest courts of two states in this circuit, both of which have adopted the common law of England, seem to hold opposite views on the question. Mitchell v. Railroad Co., 75 Ga. 404; Johnson v. King, 64 Tex. 228. As the action for malicious prosecution and for libel in this case seems to be identical in all the elements of the damages claimed, it is not necessary for us to decide between these conflicting authorities in our own circuit. Nor is it necessary or useful for us to inquire whether the special damage the plaintiff avers does not bring his case within the recognized exceptions to the English rule denying a right of action for the malicious prosecution of a civil suit. These exceptions or qualifications of the rule are so fully recognized, though not exhaustively or very distinctly defined, that the qualifications are a part of the rule itself; so that, to speak more accurately, certain actions for malicious prosecution of a civil suit do not come under the rule. The plaintiff contends that this is one of those that are not obnoxious to the rule; but for the reasons just stated, and because the question is not expressly raised by the recorded rulings on the demurrers, we express no opinion on this contention.

The plaintiff also contends that the libelous matter laid was published from day to day, successively, from September 6, 1891, to November 18, 1893, during all of which time the actionable char-

ges were constantly addressed to the court, averred to be true, and the plaintiff continuously proclaiming himself ready to prove them to be true. And if this contention is not sustained, he then urges that every reiteration of the charges in an amended and in supplemental bills and in original and supplemental replications was a new publication on the days that they were respectively filed, some of which were within the year next before the bringing of this action, and on each of which he counts in his petition. If driven from this contention, he by no means surrenders, but submits that in making up and printing and publishing the transcript on appeal the defendant in this action embraced all of his libelous pleadings, and that the filing of it in this court, and the pressing of it in open court on the hearing of his appeal, were new publications of the libel. But, superseding all of these contentions, so far as they touch the question of limitation, he submits:

"Upon the question of limitation we earnestly insist that legal principles and analogy alike require that a cause of action for libelous proceedings and statements in court proceedings cannot arise until the final determination of the cause in which such pleadings are filed. That such is the rule in all jurisdictions as to malicious prosecutions is undisputed, and this concensus of opinion is not due to any statutory provision on the subject, but to the application of the general principles of common law, every one of which is equally potent with reference to cases for libelous pleadings. It is just as essential to the due and orderly administration of justice that the issues presented in the libelous pleadings should be determined in the court in which they are tendered, and the truth or falsity of such pleadings be therein adjudged without interference by any other tribunal, as it is that right of action for a malicious prosecution should be deferred until the issues joined in the malicious suit are determined in favor of the defendant. It is quite as inconsistent with the orderly administration of justice for the party against whom libelous charges are made in judicial proceedings to go at once into another tribunal, and there controvert the matters set out in such libelous pleadings, and to have two courts trying the same issues of fact between the same parties at the same time, as it would be to pursue a similar course in a suit for malicious prosecution. And so with every reason given by the courts and elementary writers for deferring the right to sue for damages for malicious prosecution until the adjudication of the issues therein. All apply with equal force to cases of the character of the one under consideration."

In an action for malicious prosecution "the plaintiff must charge and prove that he has been prosecuted by the defendant, that the prosecution was malicious, that it was instituted without probable cause, that the prosecution has terminated in his favor, and that he has sustained damage. * * * The reasons why an action should be terminated in favor of a defendant before the defendant can commence action for malicious prosecution would seem to be as follows: First, if the action is still pending, the plaintiff therein may show in that action that he had probable cause for commencing the suit by obtaining a judgment therein against the defendant, and he should not be called upon to show such a fact in a second action until he has had this opportunity of showing it in the first; second, and if the action has terminated against the defendant, then there is already an adjudication against him, showing conclusively that the plaintiff had probable cause for commencing the action." Marbourg v. Smith, 11 Kan. 554. The defendant in the

suit will not be permitted to thus put his antagonist on the defensive, and the courts will not be forced to entertain and dispose of two suits between the same parties about the same matter, at the same time, while it appears that the matter may be settled by and in the first suit.    The courts do not favor suits for malicious prosecution, for it is necessary that the avenues of justice should not be narrowed; but, as civil suits are not, like criminal prosecutions, carried on for the benefit of the public, less favor and indulgence is to be shown to the plaintiff who maliciously arrests another than to the prosecution of an indictment.    2 Cooley, Bl. Comm. 126, note 1.   The doctrine is old that the action complained of must be terminated in favor of the defendant before he can have his action for malicious prosecution.    If the first suit is adjudged against him, it will not be tolerated that this judgment shall be "blown off by a side wind," as was said by Hale, C. J., in Vanderbergh v. Blake, Hardr. 194.   Even in cases where no appeal is allowed from the judgment against the defendant in the first suit, his action cannot be allowed, for the courts cannot grant an appeal where the legislature has refused it.    In Rice v. Coolidge, 121 Mass. 393, it is said in the opinion of the court:

"It seems to be settled by the English authorities that judges, counsel, parties, and witnesses are absolutely exempted from liability to an action for defamatory words published in the course of judicial proceedings. [Citing cases.]  The same doctrine is generally held in the American courts, with the qualification as to parties, counsel, and witnesses, that, in order to be privileged, their statements made in the course of an action must be pertinent and material to the case. [Citing cases.]  We assume, therefore, for the purposes of this case, that the plaintiff cannot maintain an action against the witnesses in the suit in Iowa for their defamatory statements, though they were false."

The suit of Rice v. Coolidge was not against the witnesses, hence it was not necessary for the court to announce its doctrine, as, for the purposes of that case, assuming the witnesses were not liable, it did not follow that the defendants were not liable.    In White v. Nicholls, 3 How. 266, the supreme court settle the question for this court thus:

"The investigation has conducted us to the following conclusions, which we propound as the law applicable thereto: (1) That every publication, either by writing, printing, or pictures, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous or odious or ridiculous, is prima facie a libel, and implies malice in the author and publisher toward the person concerning whom such publication is made.  Proof of malice, therefore, in the cases just described, can never be required of the party complaining beyond the proof of the publication itself.  Justification, excuse, or extenuation, if either can be shown, must proceed from the defendant. (2) That the description of cases recognized as privileged communications must be understood as exceptions to this rule, and as being founded upon some apparently recognized obligation or motive, legal, moral, or social, which may fairly be presumed to have led to the publication; and, therefore, prima facie relieves it from that just implication from which the general rule of the law is deduced.  The rule of evidence, as to such cases, is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situations of the parties, and to require of him to bring home to the defendant the existence of malice as to the true motive of his conduct.  Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of malice, however wicked, however express, under

the protection of legal forms. We conclude, then, that malice may be proved, though alleged to have existed in the proceedings before a court or legislative body or any other tribunal that may have been the appropriate authority for redressing the grievance represented to it; and that proof of express malice in any written publication, petition, or proceeding addressed to such tribunal will render that publication, petition, or proceeding libelous in its character, and actionable, and will subject the author and publisher thereof to all the consequences of libel. And we think that, in every case of a proceeding like those just enumerated, falsehood and the absence of probable cause will amount to proof of malice."

It thus appears that the privilege is not absolute, that the action for such a libel will not be rejected, but the plaintiff will have to show that the matter laid as libelous was false, and was published maliciously, and without probable cause. If the words complained of are such as impute crime to the plaintiff, and therefore, if spoken elsewhere than in the course of judicial proceedings, would import malice, and be actionable in themselves, requiring only proof of publication, yet, if they are applicable, and pertinent to the subject of the inquiry, they are not thereby rendered absolutely privileged, but are only privileged so far as to put on the plaintiff in the action for the libel the burden of showing that they were false, and were uttered out of malice, and without probable cause. If the words were not pertinent and material, they would be stricken out at the cost of the pleader on motion as impertinent and scandalous. If not subject to be thus summarily dealt with, because pertinent and material to the issue in the suit, it seems clear that a determination of that suit against the defendant would conclusively establish as to him the existence of probable cause. If it is suggested that in the original suit this issue may be involved with many other issues between the libeler and the defendant or between the libeler and other associated defendants, so as to protract that litigation to a great length, like the celebrated suit of Mrs. Myra Clark Gaines, which outlived two generations, and survived all of the original actors in it except the indomitable little woman who was the plaintiff, it may be answered: What if her original pleading had contained libelous matter, charged against one of the defendants, pertinent and material to the issues with that defendant in connection with which it was used; would she, the libeler, have ground of complaint that the defendants were not permitted to or did not sue her thereon until the close of her 50 years' struggle to establish their truth? All of her time and means and energies were being taxed to their uttermost to establish at least probable cause for her averments. With more apparent plausibility it might be argued that it was a denial of justice to the libeled defendant to have to wait so long for his cause of action to mature. As already suggested, if the libelous matter was impertinent, the defendant had the right to have it stricken out on motion, and thus obtain judgment in his favor thereon; but the plaintiff would not be heard to say that he should set the statute of limitation running in her favor when she could, on her own motion, have the matter stricken out if she chose to abandon it.

Without further consideration of analogies which appear to us to be so close as to lose their character of analogies and become

identical, we conclude that every reason which has been advanced or which we can perceive for holding that a cause of action for malicious prosecution does not exist until the malicious prosecution is terminated in favor of the defendant, applies with equal force to a suit by the defendant for libel founded on publications made in the course of the judicial proceeding in the first suit. It follows that the circuit court erred in sustaining the defendant's demurrer suggesting the limitation of one year. It is ordered that the judgment of the circuit court be reversed, and the case remanded, with directions to that court to overrule the demurrer setting up prescription, and award the plaintiff a venire.

PARDEE, Circuit Judge, dissenting.