60 So.2d 120 (1952)
GREEN
v.
CHAMBERLAIN.
No. 3557.
Court of Appeal of Louisiana, First Circuit.
June 30, 1952.
Cook, Clark & Egan, Benj. C. King, Shreveport, for appellant.
Durrett & Hardin, Baton Rouge, Ferd. C. Claiborne, New Roads, Chas. H. Dameron, Baton Rouge, for appellee.
*121 LOTTINGER, Judge.
This is an action in jactitation or slander of title in which the plaintiff, Edward L. Green, alleges that he is the owner of a tract of land in the Parish of Pointe Coupee, being the East Half of Section 22, Township 6 south, range 8 East, which he acquired by acts of record on file in Conveyance Records of Pointe Coupee Parish in Book M, Entry No. 178, and Book S, Entry No. 2289. It is further alleged that plaintiff and his immediate authors in title have been in actual physical, open, corporeal and notorious possession of this tract as owner for more than twelve years immediately preceding the suit and that the defendant, Hugh Chamberlain, is slandering his title to the property by claiming to be the owner of a portion thereof and by having recorded an oil, gas and mineral lease affecting same in the Conveyance Records of Pointe Coupee Parish in Book 21 under Entry No. 489. The plaintiff claimed that this slander had damaged him to the extent of $30,000 and prayed for judgment ordering the defendant either to disclaim any title whatever to the property or to assert his rights and for $30,000 as damages.
The defendant first filed a plea of vagueness and a prayer for oyer in which he prayed for oyer of the documents referred to in plaintiff's petition and sought to have the court require plaintiff to amend and specifically describe the "portion" of the property allegedly slandered and to itemize the damages claimed. At the same time defendant filed an exception of no right of action wherein it was specifically alleged that the plaintiff was not in possession as owner of the following described property.
"88.30 acres of land situated in Section 22, Township 6 South, Range 8 East, Pointe Coupee Parish, Louisiana, excepted in an act of sale by Hugh Chamberlain to Union Bank & Trust Company dated August 28, 1937, filed and recorded September 3, 1937, in Conveyance Book `M' Entry 258, Records of Pointe Coupee Parish, Louisiana, said property being more specifically described in said act of sale wherein same was excepted, as follows:
"88.30 acres taken by Atchafalaya Levee Board for levee purposes."
It was further alleged by defendant that plaintiff has specifically acknowledged that the above described 88.30 acres of land was owned by defendant and had attempted to purchase same from him. Attached to the exception was an act of sale which was alleged to have been tendered defendant by plaintiff for execution and it was also alleged that plaintiff had recognized the ownership of the property by defendant and that he, the plaintiff, was not in possession thereof as owner.
On the trial of the exception of no right of action the plaintiff abandoned his claim for $30,000 and accordingly the question of damages is no longer an issue in the case. The lower court overruled the exception of vagueness but sustained the prayer for oyer in part and required plaintiff to file the acts referred to in his petition as the basis of his ownership of the property. Evidence was adduced on the exception of no right of action and the plaintiff testified (over objection by counsel for defendant) that he had been in possession of the entire East Half of Section 22 since 1936 by fencing same and grazing cattle thereon. He testified also that a levee runs through the center of this tract and that he had fenced same and grazed his cattle thereon. On cross examination counsel for defendant attempted to question plaintiff concerning his alleged attempts to purchase the property and his acknowledgements that he did not possess as owner. These questions were objected to by counsel for plaintiff and the trial judge ruled that the question of title not being at issue, the questions would be irrelevant. Two witnesses, Mr. W. H. Duckworth and Mr. Rauhaman Long, both corroborated plaintiff's testimony to the effect that he had possessed the property by fencing and grazing. The exception was submitted on briefs and subsequently defendant filed an exception of no cause of action. In a written opinion the trial judge later overruled both exceptions.
*122 The defendant then filed an answer in the nature of a general denial and specifically denied that the execution by him of the oil, gas and mineral lease referred to in plaintiff's petition constituted slander of title of any property belonging to plaintiff. It was further alleged that the "portion" of the East Half of Section 22 referred to in plaintiff's petition was a tract of land some 700 feet in width, containing 88.30 acres, which had been appropriated by the Board of Commissioners of the Atchafalaya Basin Levee District on March 28, 1935 as evidenced by a resolution of said Board and receipt of Hugh Chamberlain which was attached to the answer. Also attached to the answer was a map of the U. S. Army Corps of Engineers showing the specific location of the 88.30 acre tract.
After the answer was filed, plaintiff filed a rule for judgment on the pleadings which was denied by the trial judge.
On the trial of the case on the merits the plaintiff introduced in evidence the oil, gas and mineral lease executed by the defendant which was the basis of the alleged slander of title. Counsel stipulated that the lease was still in effect and plaintiff introduced the evidence previously taken on the trial of no right of action. The defendant introduced the map and documents attached to his answer and an application executed by plaintiff for permission to build a fence on the levee and to graze cattle thereon, together with a permit which was issued to plaintiff by the Board of Commissioners of the Atchafalaya Basin Levee Board. It was stipulated that the application was filed and the permit issued more than one year previous to the filing of the suit, that the permit was still effective and the sum of $10 had been actually deposited by plaintiff with his application and was still on deposit. It was also stipulated that plaintiff had been Vice-President of the Board of Commissioners of the Atchafalaya Basin Levee Board since October 11, 1948. A stipulation was made to the effect that the land described in the oil, gas and mineral lease executed by defendant was the same as that appropriated by the resolution of the Levee Board and shown on the U. S. Army Engineer map filed in evidence. It was further stipulated that a Mr. Steve Garret, if called as a witness for defendant, would testify that the grazing rights covering the property involved are worth at least $2 per acre per year and that plaintiff, if called as a witness, would testify that the property was fenced by him in 1938 and had been under fences since that time.
On December 18, 1950, the trial judge in a written opinion rendered judgment ordering the defendant to assert his claim of title to the 88.30 acre tract within sixty days or be forever barred from claiming title thereto, and from this judgment the defendant has appealed suspensively to this court.
The first question to be disposed of is plaintiff's motion to dismiss the appeal. Within ten days from the rendition of the judgment of the lower court, the defendant suspensively appealed and it is counsel for plaintiff's contention that prior to the expiration of the sixty day period provided in the judgment same is not a final appealable judgment. In support of this contention they cite the case of Sherburne v. Iberville Land Co., 192 La. 1091, 190 So. 227.
We do not think the motion well founded. While it is true that in the Sherburne case, supra, the late Chief Justice O'Niell referred to the judgment rendered therein as being "interlocutory" and not final or definitive, an examination of the particular facts presented in that case will serve to distinguish it from the one at bar. In the Sherburne case, as admitted by counsel for plaintiff, the appealability of the judgment was not an issue, and the question presented concerned the right of the defendant to convert the jactitation action into a petitory action by way of answer instead of by petition in another petitory action. The nature of the judgment itself and the reason for its being classified as interlocutory, will be seen from the following language found at 190 So. 229 and 230:
"The motion of the receiver to strike out and dismiss the answers which the defendants filed after the judge ruled that the plaintiff was in possession of the property and therefore had the *123 right to proceed with his jactitation suit should have been overruled. There is no reason why the defendants should have filed a new and independent petitory action instead of converting the jactitation suit into a petitory action. The suit was not terminated by the judge's ruling that the plaintiff had possession of the property and therefore had the right to proceed with his jactitation suit. The judge did not declare in his judgment, maintaining that the plaintiff held possession of the property, that the defendants could not present the question of title again by converting the jactitation suit into a petitory action. The judgment, limiting the time in which the defendants might assert their claims, was not a final or definitive judgment. It merely maintained that the plaintiff had the right to proceed with his jactitation suit. The judgment was not an adjudication at all on the claims which the defendants had asserted in their original answers to the suit, because, by the ruling of the judge during the hearing of evidence, these claims were withheld temporarily or until the judge could dispose of the question whether the plaintiff had possession of the property. We say that the withholding of the defendants' claims to the mineral rights was only temporary, to abide the judge's ruling on the question of possession, because the judge and the attorneys, virtually so declared. We have emphasized this in our quotations from the judge's ruling, and from the attorneys' announcement. For example, the judge in his ruling used twice the expression `now,' and once the phrase `at this stage,' and the phrase `until the defendants assert', et cetera; and the attorney for the defendants, in his acquiescence in the judge's ruling, submitted that `at the present time' the only question before the court was the question of possession on the part of the plaintiff in the jactitation suit. And, in the judgment appearing at the end of the judge's reasons for judgment,and again in his so-called formal judgment, it was declared that unless the defendants asserted their claims by affirmative action within sixty days `this judgment shall become final.' That meant that the judgment was not a final or definitive judgment in so far as the claims which the defendants had assertedand had withheld temporarilywere concerned." (Emphasis ours.)
The very recent case of Collier v. Marks, 220 La. 521, 57 So.2d 43, 45, appears to be decisive of the issue and the following is pertinent here:
"As heretofore set out, the judgment pursuant to which this suit was brought provided that the defendants in that suit should disclaim title to the lands or assert such title or rights as they might have to the lands by petitory action against plaintiff within 60 days from the date of the judgment (June 10, 1948). In the absence of a suspensive appeal the 60-day period set in the judgment would have expired 60 days from the date of the judgment, but by taking a suspensive appeal appellants suspended the effect of the district court's judgment until such time as a judgment of this court on appeal might become final. The statement `60 days from the date of this judgment' under the law could mean only `60 days from the date this judgment becomes final'. Under this interpretation plaintiff Collier had to assert his rights within 60 days from the date of the judgment in the event no suspensive appeal was taken or, if such an appeal was taken, within 60 days from the time the judgment became final in this court.

"Since a suspensive appeal was taken, there is no merit in the argument that the 60-day period began to run from the date of the judgment. By such a holding the appellant would have lost his right to institute his action while the suspensive appeal was pending because the appeal was not acted upon within 60 days.
"Appellant is in error in his conclusion that, when the decree of this court became final, there was no judgment *124 of the lower court fixing the delay for the filing of his petitory action. If his argument were correct, the taking of a suspensive appeal in the instant case would have had the effect of voiding entirely that portion of the judgment of the district court setting the 60-day period for bringing the petitory action. His suspensive appeal certainly could not have this effect; it simply stayed in its entirety the judgment rendered by the lower court, including that portion setting the 60-day period, until the matter could be finally disposed of by this court. Moreover, we do not think there was any duty on this court in affirming the judgment to fix a time within which the petitory action was to be filed, because that portion of the judgment of the district court fixing the 60-day period simply remained in abeyance until final action by this court, at which time it became fully effective." (Emphasis ours.)
In oral argument before this court counsel for defendant raised the question of prescription and have subsequently filed a formal plea of prescription, the basis of which is that as the oil, gas and mineral lease executed by defendant was recorded on May 11, 1948, and suit was not instituted until March 24, 1950, more than one year had elapsed, since the alleged disturbance of plaintiff's possession. They contend further that this form of action is governed by the same rules as apply to possessory actions and that, therefore, the prescriptive period of one year as set out in C. P. Articles 49 and 59 and LSA-C.C. Article 3536 is applicable here. This particular question appears to have been raised only once in our jurisprudence and then in the recent case of Jackson v. Davis, La.App., 49 So.2d 497, wherein the Court of Appeal for the Second Circuit held that C. P. Article 49 is not applicable to an action in jactitation and that, therefore, such an action may be brought even though a year has passed since the institution of the slander.
Counsel for defendant have cited several cases decided by the Supreme Courts and Courts of Appeal which they contend stand for the proposition that the one year prescription period is applicable here. We have carefully examined these authorities and none of them, however, deal squarely with the question here presented. As stated before, the Jackson case, supra, seems to be the only case directly in point and as its rationale appears to be sound we have decided to follow it. In the Jackson case the court held that the slander was continuous or current due to the fact that defendant admitted in his answer his present slander by publicly declaring his ownership. The same situation is present here, as even though the lease was recorded more than a year previous to the filing of suit, it is, according to the stipulation of counsel, still of record and still effective and hence would likewise appear to be a current or continuing slander. In other words, we are of the opinion that the slander was not committed by the mere recordation of the lease but is being committed by the continued existence of the lease on record together with the acceptance of rentals by the lessor. We do not mean by this to voice our opinion as to whether a prescriptive period of more than one year may be applicable to suits of this nature; we are merely of the opinion that in the case of a continuing slander, as here, that suit is timely brought if instituted within one year from the time of the existence (as opposed to the initiation) of the slander.
Counsel for both sides agree that the rules governing cases of this type are the same as those governing possessory actions, They also agree that the 88.30 acre tract is not owned by the Atchafalaya Basin Levee District and that that body merely has a servitude over same. The question for decision, therefore, is whether the plaintiff has been in the actual physical possession of the property, as owner, for more than one year preceding the filing of suit. This is the question that was first raised by defendant in his exception of no right of action, which was filed in limine under the provisions of Act No. 241 of 1946, LSA-R.S. 13:5063, 13:5064, and which was again raised on the trial of the merits. In his exception of no cause of action the position of the defendant was that the *125 plaintiff has exhibited a title which shows on its face that he could not possess the 88.30 acre tract as owner. The exception of no cause of action is not being urged in this court as such, but the point just mentioned is presented in support of defendant's contention that plaintiff does not have the requisite possession to maintain the suit.
There seems to be no dispute as to the acts of possession exercised by the plaintiff and the matter resolves itself into whether same are legally sufficient to form the basis of the action. As pointed out previously, the 88.30 acre tract in dispute has a levee on it and defendant's first contention is that no person can be in the real and actual possession of property which has been appropriated for public use for levee purposes and upon which a levee has actually been constructed. In support of this contention, counsel cite LSA-C.C. Article 482 and 665 for the proposition that a levee is a public place and not susceptible to private ownership.
The definition of a public place, however, appears to be found in LSA-C.C. Article 453, which reads as follows:
"453. Public things are those, the property of which is vested in a whole nation, and the use of which is allowed to all the members of the nation: of this kind are navigable rivers, seaports, roadsteads and harbors, highways and the beds of rivers, as long as the same are covered with water". (Emphasis ours.)
A reading of the above quoted codal article shows that in order to be classified as a public place, the property itself must be vested in the whole nation. Here the property, or ownership of the land, is not vested in the public; the only thing the public has is a servitude.
LSA-C.C. Article 665 cited by counsel for defendant reads as follows:
"665. Servitudes imposed for the public or common utility, relate to the space which is to be left for the public use by the adjacent proprietors on the shores of navigable rivers, and for the making and repairing of levees, roads and other public or common works.
"All that relates to this kind of servitude is determined by laws or particular regulations." (Emphasis ours.)
Since a public thing, under LSA-C.C. Article 453, is on the property of which is in the public and in a levee servitude, as defined by LSA-C.C. Article 665 quoted above, only the use of the land is public, we do not think that property subject to a levee servitude is a public place within the meaning of LSA-C.C. Article 482 and do not think that Article controlling here. Be that as it may, however, it will be noted that Article 482 itself provides as follows:
"482. Among those which are not susceptible of ownership, there are some which can never become the object of it; as things in common, of which all men have the enjoyment and use.
"There are things, on the contrary, which, though naturally susceptible of ownership, may lose this quality in consequence of their being applied to some public purpose, incompatible with private ownership; but which resume this quality as soon as they cease to be applied to that purpose; such as the high roads, streets and public places." (Emphasis ours.)
It will be noted that the article does not make public places per se insusceptible of private ownership but only when applied to a public purpose incompatible with private ownership. Under LSA-C.C. Article 658 the part of an estate upon which a servitude is exercised does not cease to belong to the owner thereof and we are of the opinion that the exercise of a levee servitude is not a public use "incompatible with private ownership" as dealt with in LSA-C.C. Article 482.
Counsel for defendant lay great emphasis on the expressions found in the case of Wilson v. Aetna Insurance Company, La. App., 161 So. 650, wherein the court held that the owner is physically evicted by the exercise of the servitude by the erection *126 of the levee. The question before the court, however, in that case was not the matter of whether a party could possess levee property as owner, but rather whether the plaintiff had "fee simple" title to the land as required by her insurance policy. The holding of the court was that the exercise of the servitude deprived her of perfect ownership due to the fact that the granting of a servitude is a dismemberment of perfect ownership as stated in LSA-C.C. Article 490, cited by the court.
Counsel for defendant also cite the case of Caillier v. Profito, 171 La. 693, 131 So. 851, which holds that one cannot lay the basis for thirty year prescription on possession of a levee until the levee is abandoned. Counsel for plaintiff contend that this authority is not applicable here, however, as in the case at bar, unlike the Caillier case, the plaintiff has a title to the tract in question. In this connection, it is necessary to refer to the description of the property which plaintiff claims to own, which is as follows:
"A certain tract of land situated in the Parish of Pointe Coupee, State of Louisiana, known and designated on the maps of the United States Surveys as the East Half (E½) of Section Twenty-two (22) Township Six (6) South Range Eight (8) East, containing Three Hundred twenty (320) Acres less eighty eight and thirty one hundredths (88.30) acres taken by Atchafalaya levee board for levee purposes; and less also an undivided one-fourth interest in and to all oil, gas and minerals in, on or under or in any manner appertaining to said tract, which one-fourth interest in oil, gas and minerals was reserved by Union Bank & Trust Company, in Liquidation, in the act of sale by it to Edward L. Green, hereinafter described.
"Being the same property acquired by John W. Green from Edward L. Green by act of sale dated March 26th, 1938, filed and recorded March 26th, 1938, in Conveyance Book `N', Entry No. 183 of the Records of Pointe Coupee Parish, Louisiana." (Emphasis ours.)
Counsel for defendant contend that the 88.30 acre tract was specifically excepted from the land which plaintiff acquired and therefore plaintiff cannot rely upon the legal proposition that possession of the remainder of the tract, with title, constitutes a possession of the whole. It is counsel for plaintiff's contention, on the other hand, that his deed does give him title to the entire tract and he cites in support thereof the case of Rock Island A. & L. R. Co. v. Guillory, 205 La. 141, 17 So.2d 13, 15, the description contested therein being as follows:
"A certain tract of land, together with buildings and improvement thereon situated at Easton, Evangeline Parish, Louisiana, and being the SW¼ of SW¼ of Section 37, Township 3 South, Range 1 West, Louisiana Meridian, less that portion sold to Octave Ardoin and the Rock Island Railroad for a right of way; the tract here conveyed being approximately 35 acres." (Emphasis ours.)
"In short, as the railroad company had acquired only a right of way, the sale excepted only what it had acquired in the strip of land it occupied."
"It is a principle of universal application that grants are liberally, exceptions strictly, construed.'"
"It is well settled that `When the language making an exception or reservation in a deed is doubtful, it should be construed more favorably to the grantee.'"
We can find no valid distinction between the description contained in the cited case and the one at bar. The Supreme Court held therein that title was transferred to the vendee, subject to a servitude in favor of the railroad. This being the latest expression by our Supreme Court on the matter, we feel constrained to follow it and consequently hold that plaintiff's title was sufficient for him to have possession of the whole tract by virtue of his possession of a part.
*127 The second contention of counsel for defendant is that the plaintiff was a mere "tenant at will" of the Levee Board for more than one year prior to the filing of the suit and hence could not have possessed as owner. We have already concluded that in view of the cited codal articles coupled with plaintiff's title possession of a part of the tract was possession of the whole and we now address ourselves to the question of whether this possession was vitiated by his dealings with the Levee Board in applying for and obtaining the fencing permit previously referred to. We do not think that it was.
We have no quarrel with defendant's contention that neither a lessee nor a tenant at will has sufficient possession to maintain an action in jactitation, but we do not believe that the facts present here justify our concluding that the plaintiff was a lessee or tenant at will. As stated before, while the plaintiff may have had imperfect ownership to the land itself, due to its being burdened with a servitude, an agreement between him and the servitude holder does not, in our mind, place him in the category of a lessee. Without lengthening this opinion by quoting the fencing permit, we think it sufficient to state that same provides for the type of fence to be built, with the right reserved by the Levee Board to remove stock or any part of the fence when necessary. We are unable to construe this agreement in any manner which would reflect upon the plaintiff's intent to possess the land as owner. True it is that he recognized therein the Levee Board's servitude thereon and that body's right to protect its servitude, but this does not amount to his recognizing the Board or anyone else as owner of the land itself. In other words, we do not feel that the recognition by one of the existence of a servitude on property can affect his intentions as to the ownership of the land itself, and conclude that the obtaining of a permit for fencing and grazing did not constitute the plaintiff a lessee insofar as the land itself is concerned.
The third contention of the defendant involves the alleged attempts of the plaintiff to purchase the tract in question from the defendant. It will be remembered that the trial judge refused to admit testimony on this point and the alleged acknowledgements by plaintiff that defendant owned the property on the ground that the validity of plaintiff's title was not at issue. In this ruling we believe the ruling of the trial judge was correct. The title of plaintiff is at issue in this matter only insofar, as pointed out previously, as same affects his possession and we believe that even had the trial judge admitted evidence concerning the alleged attempts to purchase from defendant that it would have had no effect upon the question of possession. The following expression in Williams v. Williams, La.App., 56 So.2d 216, 219, is pertinent:
"Carried to its logical conclusion, appellee's argument means that where one has a valid title to real property, but to remove a cloud therefrom takes deed from another whose adverse title to the property is inferior, he thereby admits his last vendor to have had the better title, and henceforth in a contest would be estopped to plead his first and better title to defeat his adversary. Such a contention, on its face, it seems to us is wholly unsound.

"It frequently occurs that owners of land, under valid chain of title, acquire from inferior claimants thereof whatever interest they have therein in order to clear the title, and to avoid the harassment of litigation."
For the foregoing reasons we conclude, as did the trial judge, that the plaintiff has satisfactorily established the required possession for a suit of this nature and consequently the judgment appealed from is affirmed.
Judgment affirmed.