Della H. WARREN, Plaintiff,

v.

BANK OF MARION, et al, Defendants.

Civ. A. No. 84–0348–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Sept. 20, 1985.

Mary Lynn Tate, Abingdon, Va., Lorne Campbell, Independence, Va., for plaintiff.

Stephen M. Hodges, Abingdon, Va., C. Adrian White, Bristol, Va., Joseph Tate, Marion, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

GLEN M. WILLIAMS, District Judge.

Plaintiff instituted this action seeking damages for slander, slander of title, emotional distress and violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. The action is now before the court on defendants' motions for summary judgment pursuant to Fed.R.Civ.P. 56. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

### I.

The controversy at bar arises over a suit filed in the Circuit Court of Smyth County, Virginia on December 19, 1978, and a notice of lis pendens filed among the land records in the Smyth County Clerk's Office on December 20, 1978. These were filed by the defendants Bank of Marion (the Bank) and Grissom Motor Parts, Inc. (Grissom Motor), both Virginia corporations, against the plaintiff, Della H. Warren, a resident of Tennessee, and against land recorded in her name, respectively. As set forth in the bill of complaint, defendants alleged, *inter alia*, that plaintiff's son, James Warren, was owing on two notes payable to the Bank and an account to Grissom Motor; that subsequent to execution of the first note he conveyed certain parcels of real estate located in Smyth County to plaintiff; that he had fled the Commonwealth of Virginia without making payment on these debts; and that he had taken with him the collateral, an automobile, that he had given with one of the notes. As part of their relief, defendants sought to have the conveyances from James Warren to plaintiff set aside pursuant to Virginia statutes governing conveyances made in an attempt to defraud creditors. In the memorandum of lis pendens,

the defendants gave notice that the suit in the Smyth County Circuit Court was pending, stating that the object of the action was "to set aside as fraudulent and void certain deeds made by James R. Warren to Della H. Warren ... and to subject the property therein mentioned to the payment of the plaintiffs' claim." The memorandum went on to describe the property James Warren conveyed to plaintiff.

On September 22, 1983, the Smyth County Circuit Court ordered the Bank and Grissom Motor's suit against plaintiff dismissed upon a finding that they had failed to prove that plaintiff had attempted to defraud them. Subsequently, the defendants prepared a release of lis pendens, which was filed on October 5, 1983 with the Smyth County Clerk's Office.

Plaintiff filed the present action on September 21, 1984. In count one of her complaint, she essentially alleges that as a result of the bill of complaint and memorandum of lis pendens filed by the defendants against her and her property she is entitled to damages for slander and slander of title.[1] Plaintiff also alleges in count one that she is entitled to damages for emotional distress that she suffered as a result of defendants' conduct. In count two, she alleges that defendants' efforts at collecting the debts owed them by her son constitutes violations of 15 U.S.C. § 1692 of the Fair Debt Collection Practices Act, which also entitles her to damages.

### II.

The court must now consider defendants' motions for summary judgment in which it is argued: first, that all of plaintiff's claims in both counts are barred by the applicable Virginia statutes of limitations; second, that the documented statements giving rise to the defamation claim (which defendants assume to include the claim for slander of title) is nevertheless absolutely privileged; and third, that count two does

---

**1.** Liberally construed under the standard for notice pleading, the complaint sets forth a claim of personal defamation as well as one for slan-

der of title, though plaintiff failed to set out the defamation claim in a separately numbered paragraph.

not state a claim upon which relief may be granted because neither defendant is a "debt collector" within the scope or meaning of the Fair Collection Practices Act.

### A.

In diversity actions this court must first look to the law of Virginia to determine both the appropriate statute of limitations and the time at which a claim accrues under the applicable statute. *Brown v. American Broadcasting Co.*, 704 F.2d 1296 (4th Cir.1983) (citing *Ragan v. Merchants Transfer and Warehouse Co.*, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949)). In its brief in support of the summary judgment motion, defendant Bank correctly states that in Virginia an action for defamation is subject to the one-year statute of limitations set forth in Virginia Code § 8.01–248 (1984). *Watt v. McKelvie*, 219 Va. 645, 248 S.E.2d 826 (1978); *Weaver v. Beneficial Finance Co.*, 199 Va. 196, 98 S.E.2d 687 (1957). Based on this premise, defendant concludes that plaintiff's claim of defamation is time-barred because the present action was instituted approximately five and one-half years after the December, 1978 filing of the bill of complaint and memorandum of lis pendens, which have been identified as the sole source of slanderous statements upon which plaintiff bases the claim. Defendant, in reaching this conclusion, makes two incorrect assumptions. First, defendant assumes that an action for slander of title falls within the general common law rules governing a tort of defamation. Second, defendant assumes that plaintiff's cause of action for what is, in fact, an action based on an alleged personal defamation, necessarily accrued upon publication of the alleged defamatory statements, e.g. upon the December, 1978 filings.

Though the tort of slander of title has been analogized to one of defamation, it is a separate and distinct common law cause of action. Dean Prosser has explained its historical development as follows:

The earliest cases, which arose shortly before 1600, involved oral aspersions cast upon the plaintiff's ownership of land, by which he was prevented from leasing or selling it; and from this tort acquired the name of 'slander of title.' From the beginning, however, the action seems to have been recognized as only loosely allied to defamation, and to be rather an action on the case for the special damage resulting from the defendant's interference. In the nineteenth century it was enlarged by slow degrees, first to include written aspersions and the title to property other than land, and then to cover disparagement of the quality of the property, rather than its title.

W. Prosser, *Handbook of the Law of Torts* § 128 (4th ed. 1971). Thus, the nature of a slander of title action is an aspersion upon one's property, rather than one's person. As to the law governing the various elements of this cause of action, including the appropriate statute of limitations and the time at which the action accrues under the applicable statute, the court must look for guidance to sources outside the Commonwealth since it has found no decisions by the Virginia Supreme Court dealing with a slander of title action.

It is generally recognized that in bringing an action for slander of title the plaintiff must prove that the defendant maliciously published false words, which disparaged plaintiff's property causing plaintiff to suffer special damages. *Cf. General Products Company v. Meredith Corp.*, 526 F.Supp. 546 (E.D.Va.1981) (dealing with related action for product disparagement); *see generally* 50 Am.Jur.2d, *Libel and Slander*, §§ 539–558 (1970); Restatement (Second) of Torts § 624 (1977). The alleged malicious filing of a lis pendens, which would cast a cloud over the subject property, should thus be recognized as constituting the basis for such an action, subject to any privilege to which the defendant might be entitled. For a discussion of specific and related cases, see Annot., 39 A.L.R.2d 840 (1955). For a more recent case affirming the principle that the act of maliciously recording a document that disparages an-

other's title to real estate is actionable as slander of title, see *Whildin v. Kovacs*, 82 Ill.App.3d 1015, 38 Ill.Dec. 463, 403 N.E.2d 694 (1980).

■ Accordingly, plaintiff has set forth a prima facie case of slander of title by her allegations that defendants had made false statements regarding her property in filing the memorandum of lis pendens; that defendants made claims against her property "knowing that they could not legally do so" and that as a result of defendants' slandering of her title she sustained damages through a lost sale of the subject property.

Turning, then, to the statute of limitations issue, the court has found a split of authority among those courts that have addressed the question as to which statute of limitations applies to a slander of title action in the absence of an expressly applicable statute. Under one line of authority, courts have held that the action is governed by the statute of limitations applicable to ordinary actions for defamation; whereas courts in other jurisdictions have held that the action is subject to the generally longer limitations period application to actions for trespass or injury to property. *Compare Lehigh Chemical Company v. Celanese Corp. of America*, 278 F.Supp. 894 (D.Md.1968) (applying Maryland's one-year limitations period for a defamation action in a diversity action for disparagement of property) *with Selby v. Taylor*, 57 N.C.App. 119, 290 S.E.2d 767 (1982) (applying North Carolina's three-year limitations period for trespass upon real property in an action for slander of title). The court, however, does not have to reach a decision in the present case on whether Virginia's one-year statute of limitations for defamation actions or its five-year statute of limitations for injury to property actions should govern an action for slander of title. Given the court's position on when the statute of limitations begins to run for a slander of title action as the one at bar, plaintiff's action is not time-barred even under the shorter limitations period.

■ Though there is authority providing otherwise, the court is persuaded by the decisions of those courts that have held that the statute of limitations applicable to an action for slander of title does not begin to accrue as long as the defendant maintains the claim against the plaintiff's property. *See* 53 C.J.S. *Libel and Slander* § 278 (1948). In *Chesebro v. Powers*, 78 Mich. 472, 44 N.W. 290 (1889), for example, the court, without deciding whether the shorter limitations period for defamation actions applied to the slander of title action at bar, held as follows:

> Though the deed containing the defamatory words was executed more than two years before commencement of the action, as defendants continued their claim to the premises up to within a few months thereof, plaintiff's action is not barred, even if How.St.Mich. § 8714, which provides that 'all actions for ... slanderous words and for libels shall be commenced within two years after the action shall accrue,' is applicable.

This rule was later followed in *New England Oil & Pipe Line Company v. Rogers*, 154 Okla. 285, 7 P.2d 638 (1931) (citing *Chesebro*), a case involving a slander of title action based upon a notice of claim to an oil and gas lease that the defendants recorded with the county clerk against the plaintiff's property. The notice was recorded in April, 1923. Plaintiff's action was not commenced until February, 1925. Defendants contended that the action was barred by the state's one-year statute of limitations. The court decided in plaintiff's favor, however, but without ruling on the applicable limitations period. As the court reasoned,

> We deem it unnecessary to discuss this question. The record shows clearly that the affidavit or notice complained of remained on record, and the defendant continued to assert its rights and claims to the land until about December 17, 1924, when it agreed to a judgment canceling its lease.

*Id.* at 642. "The rule as to the running of the statute of limitation in cases involving

slander of title," the court went on to state, is that " 'where the slander complained of consists of a continued claim of rights in plaintiff's property by defendant, the statute of limitations does not commence to run until defendant ceases to set up his adverse claims.' " *Id.* And in *Green v. Chamberlain,* 60 So.2d 120, 124 (La.Ct. App.1952), involving a slander of title action over facts similar to those in *Rogers,* the court held:

> [W]e are of the opinion that the slander was not committed by the mere recordation of the lease but is being committed by the continued existence of the lease on record together with the acceptance of rentals by the lessor. We do not mean by this to voice our opinion as to whether a prescriptive period of more than one year may be applicable to suits of this nature; we are merely of the opinion that in the case of a continued slander, as here, that suit is timely brought if instituted within one year from the time of the existence (as opposed to the initiation) of the slander.

■ Thus, the fact that plaintiff instituted the present action approximately five and one-half years after the filing of defendants' memorandum of lis pendens is not dispositive of her claim for slander of title. Under the rule here adopted, this cause of action did not fully accrue and the limitations period did not begin to run until the defendants released their claim against her property. Since plaintiff filed her action within one year of this release, she is not barred by application of Virginia's statute of limitations for defamation actions, much less its limitations period for injury to property. To hold otherwise would anomalously cut off plaintiff's opportunity to pursue her rights against the defendants prior to the time that defendants had exhausted their remedial efforts against her, which are the very efforts giving rise to plaintiff's present action. Moreover, the court's holding in this matter is supported by analogous decisions by state and federal courts applying Virginia statutes of limitations in which it has been held that in the event of a continuing tort the statute of limitations does not commence running until such tortious conduct has ceased. *See, e.g., Fenton v. Danaceau,* 220 Va. 1, 255 S.E.2d 349 (1979) (statute of limitations in medical malpractice suit began to run only after the termination of what was allegedly to have been a continuous and substantially uninterrupted course of treatment); *Williams v. Norfolk and Western Railway Co.,* 530 F.2d 539 (4th Cir.1975) (Virginia statute of limitations not a bar to railroad employee's civil rights actions since they related to alleged employment practices which constituted continuous discrimination); *Poe v. Lynchburg Training School and Hospital,* 518 F.Supp. 789 (W.D.Va. 1981) (*Williams* followed in civil rights suit).

■ The court now turns to what is, in fact, plaintiff's cause of action for an alleged personal defamation. Plaintiff claims to have been defamed in both the bill of complaint and memorandum of lis pendens. For reasons discussed in Part II.B. of this opinion, plaintiff cannot rely on statements contained in the bill of complaint as a basis for this claim. She may rely on statements contained in the memorandum of lis pendens, however, as a basis for such an allegation. Courts addressing the issue have generally held that a slander of property or title action may also give rise to an action for personal defamation where the statements regarding the property also contain imputations on the plaintiff's character or reputation. *See* 50 Am. Jur. 20 *Libel and Slander* § 540 (1970). The court in *Lehigh Chemical Company,* 278 F.Supp. at 896, for example, after reviewing a number of both American and English defamation and disparagement of property cases, concluded that if the alleged defamatory statement either directly or by implication "ascribes dishonesty, fraud, lack of integrity, or reprehensible conduct to the owner ... or seller of the property it [also] constitutes personal defamation." That both a defamation and disparagement of property action may arise from the same statement was recently recognized in *General Products Company,*

526 F.Supp. at 553, a diversity action of first impression involving an action for personal defamation and for disparagement of goods in which the court was to apply Virginia law. Though there was no Virginia law dealing with property disparagement to guide the court then, just as now, there has continued to be Virginia law recognizing common law actions for defamation. *Fleming v. Moore,* 221 Va. 884, 275 S.E.2d 632 (1981). Plaintiff, therefore, in her allegations that she was defamed by defendants' accusations of fraud contained in the memorandum of lis pendens has set forth a cognizable claim of personal defamation.

As stated previously, however, defendants argue that plaintiff's claim is time-barred under Virginia's applicable one-year statute of limitations because the source of the alleged defamatory statement was published approximately five and one-half years prior to institution of the present action. In addressing the statutory limitation issue as to plaintiff's second claim the court is again without Virginia law on point. Although the Supreme Court of Virginia has dealt with the issue of publication and republication of defamatory matter as this relates to the running of the statute of limitations, *Weaver v. Beneficial Finance Co.,* 199 Va. 196, 98 S.E.2d 687 (1957), it has not confronted the issue in the present context in which plaintiff's defamation claim could not be adjudicated before the parties to this action had settled their rights in prior litigation. The Fifth Circuit, however, squarely addressed the issue in this context long ago in *Masterson v. Brown,* 72 Fed. 136 (5th Cir.1896), which involved an action for libel and for malicious prosecution in a civil suit. The libel action was based on publications not absolutely privileged that were made in the course of litigation giving rise to the claim of malicious prosecution. Though more than a year had passed since the alleged defamatory statements had been published, the subsequent action was filed less than one year from the conclusion of the prior litigation. On defendant's motion to dismiss plaintiff's defamation action as untimely, the court held that plaintiff was not time-barred under the applicable one-year limitations period based on the conclusion that

> every reason which has been advanced or which we can perceive for holding that a cause of action for malicious prosecution does not exist until the malicious prosecution is terminated in favor of the defendant, applies with equal force to a suit by the defendant for libel founded on [nonprivileged] publications made in the course of the judicial proceeding in the first suit.

*Id.* at 142. As the court aptly pointed out in arriving at this conclusion, neither action could be brought if the plaintiff prevailed in the initial proceeding; only when the plaintiff received an unfavorable verdict could defendant proceed in a subsequent action and attempt to prove that plaintiff's allegations were baseless and maliciously motivated. *Id.* at 139–141. This rationale was more recently applied in *Giordano v. Tullier,* 139 So.2d 15 (La.Ct.App.1962), a case involving circumstances nearly identical to those in *Masterson.* There, the Louisiana Court of Appeals followed a number of Louisiana Supreme Court decisions in holding that the limitations period did not begin to run on plaintiff's libel claim until final judgment on appeal had been entered in the prior suit, which was the basis of plaintiff's claim in the subsequent action.

The principle derived from these cases is applicable in the present case. In proceeding on a theory of defamation, plaintiff's threshold burden will be to prove that defendants' alleged defamatory statements were falsely made. Had defendants prevailed in their action in state court plaintiff would be estopped from pursuing such a claim since defendants' assertions would have been adjudged as valid. Thus, it was only after the court ruled in plaintiff's favor (as defendant) that her action for defamation fully accrued. Since she instituted the present suit within one year from the date of the state court's final order her defamation action is timely.

The court now moves to plaintiff's third cause of action based on allegations of

infliction of emotional distress. Plaintiff alleges in paragraph VI of count one of the complaint that subsequent to institution of the state action "defendants and their agents and employees intentionally, maliciously and regularly harassed the plaintiff," which constituted "outrageous conduct" and caused her "extreme emotional distress." Plaintiff concedes in her answer to interrogatories, however, that the alleged acts of harassment were by a Bank employee only, and last occurred in 1979. Furthermore, despite the construction that plaintiff argues to be given to count one, plaintiff fails to allege any other basis for her claim of emotional distress. Thus, as defendants argue, this claim is barred by the Virginia two-year statute of limitations governing actions for personal injury. *See Moore v. Allied Chemical Corp.*, 480 F.Supp. 364 (E.D.Va.1979).

■ As to count two of plaintiff's complaint, the court does not have to rule on the timeliness of plaintiff's claim based on alleged violations of the Fair Debt Collection Practices Act. Plaintiff concedes in her brief in opposition to summary judgment that neither defendant is a "debt collector" within the scope or meaning of the Act. Count two thus fails to state a claim upon which relief may be granted.

### B.

■ The remaining issue before the court is whether plaintiff's defamation and slander of title claims are nevertheless barred based on defendants' argument that the source of the statements allegedly giving rise to these claims is absolutely privileged. It is well established that state law governs when the privilege defense is raised in a private individual defamation action, *Mills v. Kingsport Times-News*, 475 F.Supp. 1005 (W.D.Va.1979); furthermore, though no court in Virginia has addressed the issue, it is generally accepted that the same law of privileges applies to actions for slander of title. *See* 50 Am.Jur.2d *Libel and Slander* § 547 (1970). The law of privileges in this context is based on public policy protecting communications made in

certain circumstances that might otherwise be actionable. The privilege is one of two kinds, qualified or absolute, depending upon the circumstances in which it is raised. Judicial proceedings have been recognized in Virginia as constituting one of the principal occasions where communications are absolutely privileged. *See Elder v. Holland*, 208 Va. 15, 155 S.E.2d 369 (1967). In other circumstances only a qualified privilege is deemed appropriate, whereby the plaintiff can avoid the privilege defense if it is proved that the defendant's communications were published with actual malice. *See Preston v. Land*, 220 Va. 118, 255 S.E.2d 509 (1979).

As to the communications on which plaintiff bases her defamation and slander of title claims, plaintiff concedes that the bill of complaint filed in state court is squarely within the absolute privilege granted under Virginia law for communications made in the course of judicial proceedings. The real issue is whether the statements contained within the memorandum of lis pendens constitute communications protected by an absolute privilege, a qualified privilege, or no privilege at all. The Virginia Supreme Court has not ruled on the status of a notice of lis pendens in this context, but has addressed the status of debt collection related communications in an action for defamation, holding the communications made by a creditor who has an interest in the subject matter to be qualifiedly privileged. *Rosenberg & Sons v. Craft*, 182 Va. 512, 29 S.E.2d 375, 381 (1944). Also, in *Federal Land Bank of Baltimore v. Birchfield*, 173 Va. 200, 3 S.E.2d 405 (1939), involving an action for defamation, the court held the communications that were published by the defendant bank in order to protect its interest in a new loan servicing plan to be a qualifiedly privileged occasion. It is the court's opinion that the statements contained within the memorandum of lis pendens should be equally treated.

Defendants, on the other hand, argue that the subject memorandum is absolutely privileged as part of a judicial proceeding,

citing as authority *Stewart v. Fahey,* 14 Ariz.App. 149, 481 P.2d 519 (1971). *Stewart* is one of several state court decisions across the country that have relied on *Albertson v. Raboff,* 46 Cal.2d 375, 295 P.2d 405 (1956), in which the court rejected an earlier California Supreme Court decision that held a notice of lis pendens only qualifiedly privileged in an action for slander of title. In holding such a publication absolutely privileged, the *Albertson* court relied on the fact that the publication was permitted by law and considered it necessary in order to "achieve the objects of the litigation," even though a court was not involved in its making. *Id.* at 409.

■ It is this court's position, however, that when all the interests involved are taken into consideration the filing of a notice of lis pendens is more appropriately characterized as a qualifiedly privileged occasion. As a preliminary matter, such a notice can easily be viewed as an extrajudicial publication involving merely a private act, and not involving any function of the court, thus falling outside the scope of protection given to communications made in the course of judicial proceedings. Nevertheless, the filing of a notice of lis pendens gives a creditor an opportunity to protect whatever interest he believes he may have in certain real estate during litigation by preventing the property from being taken by a bona fide purchaser for value. *See* Va.Code § 8.01–268 (1984). The one holding title to the property, on the other hand, deserves the protection of a legal disincentive against an ill willed creditor who, without justification, wishes to apply undue pressure by tieing up the record owner's property with a notice of lis pendens for what could be a period of years. In holding a notice of lis pendens subject to a qualified privilege, the court is not placing any restraints on a creditor who in good faith wants to protect his potential legal interests, while at the same time allowing a landowner an opportunity to prove that she has been defamed and her property disparaged by the unfounded and malicious publication of another. Furthermore, this position comports with the

Virginia Supreme Court's treatment of the privilege defense in the *Craft* and *Birchfield* cases cited above where publications made to protect a personal or business interest was at issue.

For the reasons stated above, defendant's motions for summary judgment are denied as to count one of plaintiff's complaint, with the exception of defendants' motion as to plaintiff's claim of emotional distress, which is hereby granted. Defendants' motion for summary judgment as to count two of plaintiff's complaint is also granted.